(C. D. 1931)

E. S. SATERLIE v. UNITED STATES

United States Customs Court, Third Division

(Decided October 30, 1957)

Plaintiff not represented by counsel.

*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of bone china plates, exported from Canada on June 7, 1953, and entered at the port of Rainier, Minn., on June 8, 1953. It was assessed with duty at 35 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as decorated china tableware, containing 25 per centum or more of calcined bone. Exemption from duty is claimed on the ground that this merchandise was part of an original order given by the importer while abroad in August 1946 and covered by his baggage declaration as a returning resident.

The pertinent provision, under which the claim for exemption is made, is found in paragraph 1798 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and reads as follows:

> * * * *Provided further*, That up to but not exceeding $100 in value of articles (including distilled spirits, wines, and malt liquors aggregating not more than one wine gallon and including not more than one hundred cigars) acquired abroad by such residents of the United States as an incident of the foreign journey for personal or household use or as souvenirs or curios, but not bought on commission or intended for sale, shall be free of duty: * * *.

At the trial, Elmer S. Saterlie appeared in person and testified as follows:

After he returned from military service in 1946, he and his wife took a belated honeymoon in Canada. Over a period of 5 years, they had been putting aside a $25 bond a month for the purchase of chinaware and silver for the home. While in Canada, they saw beautiful china displayed and entered into the purchase of a set. The seller was not able to fill the order at the time, but a down payment of $10 was made. Nothing binding was said as to delivery time. After spending 48 hours in Canada, plaintiff and his wife returned to the United States and filed a baggage declaration (defendant's exhibit E), containing the following:

> Articles not accompanying residents and/or articles shipped in bonded baggage:
> China ware       107.60       To be shipped Strachan

The original order given to C. R. Strachan, Fort William, Ontario (defendant's exhibit A), is dated August 6, 1946, and lists a number of items of chinaware at various prices, making a total of $107.60, which items were to be shipped.

In April 1947, Mrs. Saterlie received a letter from C. R. Strachan (defendant's exhibit B), stating as follows:

> We are experiencing great difficulty getting any quantity of "Lady Rodney" out of the factory but we have managed to get together the following pieces:

| | |
|---|---|
| 8 cups and saucers @ 3.35 | 26. 80 |
| 8 tea or salad plates @ 2.60 | 20. 80 |
| 1 9″ baker | 6. 75 |
| 1 cream jug | 3. 10 |
| 1 sugar bowl | 6. 45 |

We do not think there is much chance of us getting any more of this order together in 1947 and we would like to know if you would like to have the above quantity shipped to you or if you would like to have the order cancelled and your deposit refunded. It is quite possible that we may start to receive this pattern in quantity by the middle of 1948.

The above prices are higher than those listed for the corresponding items on the original order. However, plaintiff asked the seller to deliver said items, except the 9-inch baker.

Thereafter, in November 1952, Mrs. Saterlie received a letter from C. R. Strachan (defendant's exhibit C), stating that the seller had received a small quantity of the "Lady Rodney" pattern and could supply eight 10-inch plates at $4.75 each and one 14-inch platter at $13.45. The letter continued:

We realize that it may not be convenient for you to come over here, at this time, and pick up this merchandise, but in view of the fact that you have waited so long, we would be glad to reserve some of this for you until it is convenient if you will advise us that you are interested.

If you do not want the merchandise or have secured it from somewhere else in the meantime, will you kindly advise us so that we may make disposition of the original order slip which we are still holding.

The prices listed in the original order for the 10-inch plates were $2.95 and, for the platter, $9.70.

Following receipt of this letter, plaintiff purchased the eight 10-inch plates at $4.75 each.

On March 6, 1953, apparently in an effort to obtain a substitute record for the original baggage declaration, Mrs. Saterlie wrote to the deputy collector at Noyes, Minn. (defendant's exhibit D), stating:

We received a shipment, in the amount of $57.15, in the spring of 1947. We now wish to purchase eight 10″ plates at $4.75 each. We have sent a Bank Money Order for $38.00 to C. R. Strachan, and ask that he hold the plates until we could mail the declaration. * * *

Mr. Saterlie stated, in the course of the trial, that the original order was not a binding contract; that he was not bound to receive and the seller was not bound to deliver any of the merchandise.

As to the purpose of the trip to Canada, Mr. Saterlie testified:

* * * we went to Canada, we stayed the alloted [sic] amount of time in order to bring back merchandise. Unfortunately, we couldn't bring it back. Certainly, we were entitled to securing and returning a certain amount of merchandise which was our intentions. * * *

*       *       *       *       *       *       *

X Q. When you went to Canada in 1946, didn't you go with the intention of buying some chinaware?—A. Not according to my wife.

X Q. I am not asking you according to your wife, I am asking you?—A. I would say that we primarily went to Canada as a trip—she had never been to Canada.

X Q. Didn't you have the question of buying chinaware while you were in Canada in your mind and wasn't it discussed between you and your wife before you went to Canada?—A. I would say no.

X Q. Did you not tell me that yesterday?—A. I conferred with my wife afterwards.

X Q. Did you not tell me that yesterday?—A. That is correct, I did. I was speaking for myself.

The only question in this case is whether the china plates received by the plaintiff in 1953 are entitled to free entry, by virtue of the exemption provided in paragraph 1798, *supra*.

All imported articles are either subject to duty or are entitled to free entry, in accordance with the schedules of the tariff act. Congress has also provided for certain exemptions from payment of duty, but such exemptions are privileges and must be strictly construed. *R. F. Shaffer* v. *United States*, 26 Cust. Ct. 39, C. D. 1295; *Geo. C. Habicht* v. *United States*, 49 Treas. Dec. 173, T. D. 41335; *A. W. Fenton Co.* v. *United States*, 51 Treas. Dec. 758, T. D. 42199. The burden is upon plaintiff to prove that he is entitled to the exemption. *May B. Frankel* v. *United States*, 2 Cust. Ct. 628, Abstract 40879. As stated in *Geo. C. Habicht* v. *United States, supra* (pp. 174 and 175):

We do not believe it was ever intended by Congress to authorize residents of the United States living along the border to make their purchases at near-by ports in Canada, going and returning in one day, buying such articles as they wish in quantities less than $100 in value, thereby defeating both the revenue of their country and the interest of their neighbors who pay taxes to support their Government and are entitled to the domestic trade in their neighborhood.

In the instant case, plaintiff is entitled to the exemption only if the merchandise was acquired abroad as an incident of the foreign journey.

It has been held that merchandise is "acquired" when title passes and the plaintiff succeeds to ownership or when an order has been accepted and a binding contract of sale made. *United States* v. *Hutchings*, 7 Ct. Cust. Appls. 283, T. D. 36800; *Mrs. R. B. McClure* v. *United States*, 62 Treas. Dec. 573, T. D. 46011; *Davies, Turner & Co.* v. *United States*, 67 Treas. Dec. 1220, Abstract 30671; *Malcolm T. MacEachern* v. *United States*, 14 Cust. Ct. 248, Abstract 50174; *Joseph Winterbotham* v. *United States*, 12 Cust. Ct. 267, Abstract 49242.

In the *Hutchings* case, the plaintiff, while abroad, ordered certain dresses to be made for her and to be delivered to her at Calais. Although the record failed to show any formal acceptance of the order, the dresses were made up, billed, and paid for. They were not delivered at Calais, but were received by plaintiff after she had returned here. The court held that when plaintiff sailed for this country she had an order out for goods to be delivered, but title had not passed to her and she had not acquired the goods abroad.

In *Davies, Turner & Co.* v. *United States, supra,* the importer ordered merchandise while abroad, paid half of the purchase price, and stipulated that delivery be made in England before his departure. The goods were not so delivered, and importer wrote to the seller canceling

the order and asking for return of the part payment. Later, however, the goods arrived in this country and were accepted and paid for. The court held that the importer did not acquire the merchandise until he determined to accept delivery and pay the balance of the purchase price; that said merchandise had not been acquired abroad and was not exempt from duty.

In the instant case, plaintiff admitted that the original order was not a binding contract of sale. The parties did not treat it as such. In 1947, the seller offered and the plaintiff accepted certain items at prices other than those in the order, and plaintiff refused to accept another of the items. In 1952, the plates here involved were offered at a price higher than that in the original order. Neither in 1947 nor in 1952 did the seller ship any merchandise, in accordance with the original order. It merely offered to hold the items for plaintiff until plaintiff decided whether or not to take them at the prices stated. Although plaintiff had an order out for goods when he returned from Canada in 1946, he did not acquire the within merchandise until he determined to accept delivery in 1952 and pay the seller's then quoted prices. It follows that he did not acquire the articles in question while abroad in 1946.

Furthermore, it is not clear that the order was placed as an incident to the foreign journey. Plaintiff, himself, apparently thought that one of the purposes of the trip was the purchase of china, although his wife disagreed. Where a foreign journey is made for the express purpose of buying merchandise, the purchaser is not entitled to the exemption provided for in the statute. *A. W. Fenton Co.* v. *United States, supra*; *R. F. Shaffer* v. *United States, supra*. In the case last cited, plaintiff and his wife saw some tiles in a store window in Nogales, Mexico, and decided to purchase them. As the store was not open and they did not care to stay in Mexico overnight, they returned to Arizona. The next day, they crossed the border, purchased the tiles, and came back to the United States. The court held that the second trip into Mexico was for the express purpose of purchasing the tiles and that, therefore, the merchandise was excluded from the exemption in paragraph 1798.

Plaintiff evidently feels that the assessment of duty works a hardship on him and was not intended by Congress. The statute itself is the best evidence of the intent of Congress, and it provides for an exemption only where goods are acquired abroad by a returning resident as an incident of a foreign journey, for personal or household use. Here, plaintiff ordered merchandise while in Canada, but no binding contract was made and no articles were delivered in accordance with the order. Instead, another offer was made some years later at higher prices. Plaintiff was not obliged to accept that offer, but, when he did choose to purchase the goods, he became liable to the payment of duty thereon, as would any other importer.

For the reasons stated, the protest is overruled and judgment will be rendered for the defendant.